O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JERRI J. I.,<br><br>    Plaintiff,<br><br>  v.<br><br>ANDREW M. SAUL, Commissioner<br>of Social Security,[1]<br><br>    Defendant. | Case No. 5:19-cv-1583-KES<br><br>MEMORANDUM OPINION AND<br>ORDER |

**I.**

**PROCEDURAL BACKGROUND**

Plaintiff Jerri Jean I. ("Plaintiff") applied for Title XVI Social Security disability insurance benefits in June 2016 alleging a disability onset date of January 1, 2014, when she was 24 years old.[2] Administrative Record ("AR") 183-85, 201. On November 15, 2018, an Administrative Law Judge ("ALJ") conducted

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] Plaintiff previously applied for benefits and was found "not disabled" in 2012. AR 91. The ALJ found evidence of changed circumstances sufficient to rebut the presumption of continuing non-disability. AR 15.

a hearing at which Plaintiff, who was represented by an attorney, appeared and testified, as did a vocational expert ("VE"). AR 28-48. On December 20, 2018, the ALJ issued an unfavorable decision. AR 15-23. The ALJ found that Plaintiff suffered from a seizure disorder. AR 18. Despite this impairment, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with "all seizure precautions, including no driving, no work at heights, or around open water or dangerous machinery, or any situation where the claimant might lose consciousness and could be seriously hurt by falling[.]" Id. The ALJ also found that Plaintiff would likely miss up to one day of work each month due to her seizure disorder (id.), reasoning as follows:

> [T]he medical evidence does not support any greater limitation than the [RFC] determined herein. While the claimant's medical records document an ongoing seizure disorder, the claimant is noted to be non-compliant with her anti-seizure medication as evidenced by laboratory results showing sub-therapeutic levels of Dilantin. Moreover, the majority of the claimant's seizures were happening at night while the claimant was sleeping, and would not interfere with daytime work. Although the claimant did start having some seizures during the day, these were not occurring frequently enough to cause her to miss work more than once a month.

AR 19-20.

Based on this RFC and the VE's testimony, the ALJ found that Plaintiff had no past relevant work, because her earnings from two months of security work did not rise to the level of substantial gainful activity.[3] AR 18. Nevertheless, the ALJ

---

[3] Plaintiff worked for a security company in October and November of 2015 before she was laid off. AR 205-06. Plaintiff also worked at Amazon for about a month in 2015. AR 31-33. When she disclosed to them that she had a seizure disorder, they told her that she could no longer work there. Id.

found that Plaintiff could work in four unskilled, light or sedentary positions: office helper, food and beverage order clerk, mail clerk, and charge account clerk. AR 22-23. The ALJ concluded that Plaintiff was not disabled. AR 23.

## II.

## ISSUES PRESENTED

This appeal presents the sole issue of whether the ALJ's RFC-related determination that Plaintiff's seizure disorder would not cause her to miss more than one day of work per month is supported by substantial evidence. (Dkt. 18 Joint Stipulation ["JS"] at 2.) Plaintiff contends that the ALJ "failed to consider the postictal[4] symptoms and effects of Plaintiff's frequent nighttime seizures" which are so serious and long-lasting that they *would* interfere with daytime work. (JS at 3-4.)

It is the ALJ's role to translate the evidence into an RFC. See Rounds v. Comm'r of S.S.A., 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence is defined as [being] 'more than a mere scintilla but less than a preponderance.'" Id. at 1098 (citation omitted). Put another way, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted). If the evidence is susceptible to more than

_____

[4] Per Wikipedia, the "postictal state is the altered state of consciousness after an epileptic seizure. It usually lasts between 5 and 30 minutes, but sometimes longer in the case of larger or more severe seizures, and is characterized by drowsiness, confusion, nausea, hypertension, headache or migraine, and other disorienting symptoms." See https://en.wikipedia.org/wiki/Postictal_state.

3

one rational interpretation, the court may not substitute its judgment for that of the Commissioner. <u>Tackett</u>, 180 F.3d at 1097-98; <u>Morgan v. Commissioner</u>, 169 F.3d 595, 599 (9th Cir. 1999). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

## III.

## SUMMARY OF RELEVANT EVIDENCE

### A.  <u>Plaintiff's Testimony.</u>

Plaintiff was born in 1989. AR 22. She has experienced nocturnal seizures ever since the age of two. AR 220, 350. Despite her seizure disorder, she was able to graduate from high school without special education services. AR 34, 205. At the time of the November 2018 hearing, she lived alone in an apartment with her seven-year-old daughter. AR 34-35. Her typical day consisted of taking her daughter "to school and stuff," apparently meaning that she walks her daughter to school, since she does not drive. AR 35, 46.

Plaintiff testified that during 2018, she had one seizure episode every month, with seizures coming in clusters of about five per episode. AR 39. In 2017, she had one seizure episode approximately every other month. AR 40. She described her most recent seizure as happening while she was sleeping; she did not wake up, and she was only aware that she had suffered a seizure because her tongue was "bit up" when she awoke. AR 36-37.

In July 2016, Plaintiff completed a seizure questionnaire. AR 220-22. She reported that she had two seizures every week. AR 220. After each seizure, she felt "very dizzy and out of it," and she was unable to resume normal activities until "the next day." <u>Id.</u>

### B.  <u>Plaintiff's Treating Records.</u>

Plaintiff's medical records consist primarily of records from (1) emergency room ("ER") visits, (2) treating visits with neurologist, Dr. Rai, and (3) her general

4

healthcare clinic, La Salle Medical Associates ("LSMA").  AR 45 (describing Dr. Rai as the doctor who treats her seizures); AR 67 (describing LSMA as her general clinic); AR 67-68 (describing her ER visits).  The following chart summarizes these records in chronological order.

| Date | Type | Summary |
|------|------|---------|
| 7/1/15 | RAI | Plaintiff told Dr. Rai that she was having "1 nocturnal seizure every 2 weeks."  AR 351.  She explained that as a child, she only had seizures at night, and only knew about the seizures because when she awoke, she could feel that she had bitten her tongue.  AR 350.  A physical and psychological examination yielded normal findings.  AR 350-51. |
| 7/20/15 | ER | Plaintiff reported "4 seizures in a row this morning witnessed" by her boyfriend.  AR 316, 319.  Tests determined that she had a low Dilantin level (1.7 with a reference range of 10-20).  AR 329, 332.  ER staff observed Plaintiff was in mild distress with tongue abrasions but otherwise made normal findings.  AR 317.  Plaintiff refused Dilantin despite her "subtherapeutic level," and the ER staff referred her back to her primary care physician.  AR 317. |
| 10/29/15 | ER | Plaintiff reported a "seizure episode today at 1400 and 3 last Friday."  AR 314.  She left the ER without being seen by a doctor.  AR 311. |
| 1/4/16 | RAI | Plaintiff told Dr. Rai that she "still gets a nocturnal seizure once every 2-3 weeks."  AR 348, 586. |
| 2/20/16 | ER | Plaintiff reported having 4 seizures while sleeping; she was not aware of the seizures until she awoke and was told about the seizures by someone else.  AR 294.  Plaintiff told the ER staff that she "only has seizures while supine in sleep."  Id.  The ER staff did not observe any post-seizure abnormalities.  AR 295.  Lab work determined that Plaintiff again had low Dilantin levels.  AR 293, 296. |
| 6/6/16 | RAI | Plaintiff told Dr. Rai that she has "has 3 seizures per month.  They mostly are nocturnal now."  AR 344. |
| 5/4/16 | RAI | Plaintiff again reported that she "has been having 3 seizures per month, all nocturnal."  AR 346. |
| 7/13/16 | ER | Plaintiff reported 4 seizures over the last week after a change in medication.  AR 284, 289.  ER staff observed normal gait and affect.  AR 284. |
| 7/18/16 | RAI | Plaintiff reported having "1-2 seizures per week" including "a couple seizures that occurred while she was awake …."  AR 342.  Dr. Rai summarized her "history of nocturnal seizures since the age of 2" and noted she was "currently having 3-4 nocturnal seizures every month" and reported "at least 2 seizures while awake since last visit."  Id. |
| 9/29/16 | RAI | Plaintiff reported "15 nocturnal seizures last month.  She did not have any seizures while awake."  AR 355. |
| 2/20/17 | ER | While in the ER waiting room "patient had a generalized tonic-clonic seizure lasting approximately one minute.  Patient admits to non-compliance with her prescribed Dilantin medication."  AR 620, 626.  ER staff observed normal speech and mood.  AR 627.  They discharged |

| | | Plaintiff with a Dilantin prescription.  AR 630. |
|---|---|---|
| 4/16/17 | ER | Plaintiff's family called an ambulance when she had 3 seizures on her bed.  AR 490.  The EMS noted that upon their arrival, Plaintiff was "post-ictal, which then resolved."  AR 490.  The ER again determined that she had subtherapeutic levels of Dilantin.  AR 499.  Plaintiff stated that she was in compliance with her medications, but she left the ER "loaded with Dilantin today."  AR 486-87. |
| 4/30/17 | ER | About two weeks later, Plaintiff was back in the ER with subtherapeutic Dilantin levels.  AR 357. |
| 5/18/17 | RAI | Plaintiff reported that she "is still getting seizures every other week at least."  AR 645.  Dr. Rai expressed that "[p]atient is a very poor historian" and he instructed her to bring her medications to their next appointment for a review.  Id. |
| 6/14/17 | RAI | At their next appointment, Plaintiff reported that she was "doing slightly better than previously.  She has had 3 seizures in the last month."  AR 647. |
| 6/18/17 | ER | Just four days later, Plaintiff was back in the ER complaining of "seizure activity this morning" with 5 episodes witnessed by family.  AR 501.  Despite suffering multiple seizures that morning, she was alert and oriented with normal speech and affect.  AR 503.  The ER determined that Plaintiff had low Dilantin levels again.  AR 506. |
| 7/12/17 | ER | Plaintiff complained of "seizure/head trauma earlier today.  Pt states she was at the park when she had a witnessed seizure."  AR 469.  She had normal speech and motor coordination, and "appropriate" affect.  AR 471.  This time, the ER determined that her seizure was due to a "Dilantin overdose" and recommended that she "not take Dilantin for [the] next three days[.]"  AR 471, 473. |
| 7/14/17 | RAI | Two days later, Plaintiff followed up with Dr. Rai.  AR 649.  He determined that Plaintiff "misread instructions for her medications and was taking 600 mg of Dilantin.  She has been somnolent and ataxic."  Id.  At the ER, she was found to have a Dilantin level of 37.  She was unsure about her seizure frequency since their last appointment.  Id. |
| 8/15/17 | RAI | One month later, Plaintiff was still not sure how often she had seizures.  AR 651.  "She states that she does not have help most of the day and is having a difficult time taking care of her children.  Id. |
| 9/28/17 | ER | Plaintiff experienced 3 witnessed seizures in bed that morning.  AR 378.  While she was "awake and alert" and walking without difficulty, her speech was slow and she "has some difficulty following complex commands."  AR 375, 385.  The ER found subtherapeutic levels of Dilantin.  AR 375, 385-86.  The ER staff noted that she was "slow to answer upon interview" and "slow to react," but she was alert and oriented with otherwise normal findings.  AR 380, 387-88.  She was still in the hospital on 10/2/17.  AR 439. |
| 10/4/17 | LSMA | A few days after leaving the hospital, she told LSMA that she had gone to the ER on 9/28/17 due to seizures; because she was experiencing seizures every 1-2 weeks.  AR 569. |
| 10/12/17 | ER | A few days later, Plaintiff was back in the ER reporting "witnessed |

| | | |
|---|---|---|
| | | seizure x 2 today bruise to [right] inner arm." AR 510, 514. Plaintiff reported "experiencing some dizziness and feels 'groggy.'" AR 514. The ER made normal findings but determined that Plaintiff suffered from low Dilantin/ phenytoin and low blood sugar. AR 510, 512. |
| 10/13/17 | RAI | Plaintiff told Dr. Rai that she was "having multiple seizures per week" and bit herself. AR 584. Dr. Rai concluded, "some of her seizures sound psychogenic." AR 653. |
| 10/17/17 | LSMA | Plaintiff told LSMA that she had experienced no seizures since her last visit to LSMA. AR 567. This is inconsistent with what she told Dr. Rai a few days earlier (AR 584) and her having gone to the ER for seizures in October (AR 510, 514). |
| 10/22/17 | ER | Plaintiff reported an unwitnessed seizure that morning with "frequent episodes of seizures." AR 540. The ER found her neurological signs, including speech and coordination, normal. AR 541. |
| 11/10/17 | ER | Plaintiff experienced 2 seizures that morning witnessed by her boyfriend but "was waiting to come out of them" before coming to the ER; during a seizure, she hit her head on her bed's headboard. AR 526, 529. The ER found her Dilantin level "was 0.5 which is consistent with patient not being compliant with her medication." AR 529. |
| 11/14/17 | RAI | Plaintiff told Dr. Rai that she continued to have seizures but could not provide a description. AR 655. He determined that "[a]t least some of her seizures have been psychogenic based on description." Id. |
| 11/30/17 | LSMA | Plaintiff reported 1 seizure within the last week, but none in the last 48 hours and stated she felt "well overall" but felt "drowsy and lethargic at times." AR 561. |
| 1/15/18 | RAI | Plaintiff had a video EEG. AR 657. During the test, she "did not have one [of] her recent types of seizures where she runs around the house, or convulsive seizures. She had an absence seizures and was noted to have intermittent generalized epileptiform discharges. She is a poor historian and does not know how often her seizures are but states that she continues to get them weekly." Id. |
| 2/15/18 | RAI | Plaintiff reported 2 seizures since her last visit; "she is doing better." AR 659 (a 50 percent reduction in reported seizure frequency from her last appointment). |
| 3/6/18 | ER | Plaintiff told the ER staff that she awoke at 5 am having a seizure then fell back asleep and had another seizure at 10 am, each lasting about 40 seconds. AR 603. She called 911 herself. Id. Per the ER staff, she was awake and alert with no speech disturbances. AR 604, 612. Despite Plaintiff stating she had not forgotten to take her mediations, ER staff suspected medication non-compliance, noting "Pt seen here for same 3 weeks ago, at that time had admitted to non-compliance of medication." AR 603. |
| 3/15/18 | RAI | Plaintiff told Dr. Rai that she "continues to have breakthrough seizures and severe headaches." AR 661. |
| 4/12/18 | RAI | Plaintiff reported having 3-4 seizures per week and Dr. Rai increased her Depakote prescription. AR 663. |
| 5/10/18 | RAI | Plaintiff reported having 1-2 seizures per week. AR 665. |

| 6/11/18 | RAI | Plaintiff's mother accompanied her to this appointment. AR 667. Per her mother, Plaintiff had experienced 4 seizures since her last visit and "usually has low levels of Dilantin in the past…." AR 667. |
| 7/10/18 | RAI | Plaintiff reported 7 seizures since her last visit, but she decided "[s]he does not want to do VNS anymore despite [Dr. Rai's] urging her to reconsider." AR 669; compare AR 45 (Plaintiff testified that Dr. Rai had opined there was nothing more she could do to treat her seizures). |

## IV.

## DISCUSSION

In support of her argument that she suffers such severe postictal symptoms that she cannot work the day after a nighttime seizure, Plaintiff cites (1) her 2016 seizure questionnaire that states she feels "out of it" after a seizure and cannot resume normal activities until the "next day" (JS at 4, citing AR 220), and (2) records from Plaintiff's visit to the ER on September 28, 2017, at which time several medical sources noted that she was "slow to answer upon interview" and "slow to react." (JS at 4; AR 387-88.) This evidence does not demonstrate that the ALJ's RFC determination lacks substantial evidentiary support for several reasons.

First, per many other medical records, shortly after suffering a seizure, the ER staff found that Plaintiff had normal speech, normal affect, and was alert and oriented. See AR 284, 295, 317, 380, 471, 503, 512, 541, 604, 627. In the only medical record that expressly discusses postictal symptoms, the ambulance staff observed that Plaintiff was displaying such symptoms when they arrived, but the symptoms "resolved." AR 490. None of Plaintiff's treating records from Dr. Rai or LSMA mention Plaintiff complaining of disabling, long-lasting postictal symptoms. This is consistent with Plaintiff reporting that on many occasions, she awoke from sleep unaware she had experienced a seizure until someone else told her or she noticed that she had bitten her tongue. See, e.g., AR 36-38, 222, 316, 350, 378, 501, 514, 526, 529.

Second, having disabling symptoms the day after a nocturnal seizure is inconsistent with Plaintiff's activities. Plaintiff has had nocturnal seizures since

the age of two, but she was still able to attend school and obtain a high school diploma. AR 34, 350. She lived alone with her seven-year-old daughter, demonstrating that she could care for her daughter's daily needs, including taking her to school. AR 35-36. While Plaintiff cites an August 2017 record in which she complained that she needed childcare assistance and Dr. Rai completed forms to request In Home Support Services ("IHSS") (JS at 4, citing AR 651), Plaintiff never testified that she ever received such services.

Third, none of the medical sources in the records cited by Plaintiff attribute her "slowness" to respond to verbal questions to her seizure disorder. They may have been noting an observation about Plaintiff's communication style unrelated to her seizures. They did note that she was otherwise alert and oriented with normal speech. AR 380. At the hearing, Plaintiff demonstrated that she was sometimes slow to answer questions, even though her most recent seizure had been two days earlier and she had slept through it, becoming aware of it only when she awoke and noticed she had bitten her tongue. AR 35-37. For example, the ALJ asked Plaintiff why she was delaying her responses to his questions and if she felt unwell. AR 34-35. Plaintiff's lawyer tried to jump in with clarifications when it seemed that Plaintiff's answers were delayed. AR 32. Plaintiff sometimes waited so long to answer a question that she forgot the question. AR 38. Dr. Rai also noted that Plaintiff was a "very poor historian," suggesting that she struggled to answer his questions, too. AR 645.

Fourth, the incident cited by Plaintiff in September 2017 involved a time when lab tests demonstrated Plaintiff had low Dilantin levels. JS at 4; AR 384-86. If Plaintiff had been medically compliant, then her health that day might have been completely different.[5] Plaintiff cannot cite symptoms that she experienced during

---

[5] In connection with Plaintiff's prior application for disability benefits, a medical expert testified that she had sub-therapeutic levels of Dilantin on seven or

times of medical non-compliance to support a finding of disability.  <u>Warre v.
Comm'r of the SSA</u>, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can
be controlled effectively with medication are not disabling for the purpose of
determining eligibility for SSI benefits.")

Fifth, regarding Plaintiff's seizure questionnaire, the ALJ gave reasons for
not fully crediting Plaintiff's subjective symptom testimony (AR 18-19), and those
reasons have not been challenged on appeal.  In any event, when Plaintiff reported
that she could resume normal activities "the next day," the ALJ could reasonably
have found that she meant when she woke up in the morning (i.e., the start of the
next day), since most of her seizures happen at night and Plaintiff was typically
able to take her daughter to school each day.

For all these reasons, Plaintiff has failed to demonstrate a lack of substantial
evidentiary support for the ALJ's conclusion that Plaintiff's seizure disorder will
not cause her to miss work more than once a month.

**IV.**

**CONCLUSION**

For the reasons stated above, IT IS ORDERED that judgment shall be
entered AFFIRMING the decision of the Commissioner.


DATED:  April 13, 2020                                    _____

                                                         KAREN E. SCOTT
                                                         United States Magistrate Judge

---

eight occasions.  AR 55.